IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DANNY CHARLES TROUT,           )
                               )
        Plaintiff,             )
                               )
vs.                            )   Case No. 09-CV-608-TLW
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social Security, )
                               )
        Defendant.             )

## OPINION AND ORDER

Plaintiff Danny Trout seeks judicial review of a decision of the Commissioner of the Social Security Administration denying his claim for disability insurance and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. # 9). Any appeal of this order will be directly to the Tenth Circuit Court of Appeals.

## Review

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A plaintiff is disabled under the Act only if his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C § 423(d)(2)(A). Social Security

regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

The role of the court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by (an individual's) statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The

evidence must come from acceptable medical sources such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

## Background

Plaintiff was fifty-six years old at the time of the ALJ's decision (R. 28). Plaintiff applied for disability income benefits and supplemental security income benefits on February 12, 2007, alleging disability since October 1, 2006, due to asthma and obesity. (R. 50, 99, 104). After a hearing on October 27, 2008, the ALJ ruled against plaintiff on January 26, 2009. (R. 13-24). Plaintiff filed a request for review, which the Appeals Council denied on July 28, 2009 (R. 1).

Plaintiff has a ninth grade education and earned his GED in 2001 or 2002. (R. 28. 29). He is 5 feet, 7 inches tall and weighs 268 pounds. (R. 41). Plaintiff has been married and divorced three times. (R. 231). Plaintiff complains of shortness of breath, back pain, obesity, and psychiatric problems. (R. 28). Plaintiff worked for the City of Bristow as a laborer until 1990, then as a superintendent for 11 years, but has not worked since his indicated onset date. (R. 28, 31). His job as a superintendent was to drive through the city in a truck evaluating and reporting water leaks. (R. 31). Plaintiff self-reports to be in remission from amphetamine dependence after using intravenous methamphetamine "crank" for many years. (R. 29, 221). Plaintiff attends therapy three days per week and contends he has trouble remembering, completing tasks, staying on task, and not becoming frustrated. (R. 29, 30).

Plaintiff has frequently been treated for shortness of breath. (R. 264). At the time of his hearing, plaintiff was smoking a pack and a half of cigarettes per day. (R. 41). In January of 2007, plaintiff was diagnosed with bronchitis and Chronic Obstructive Pulmonary Disease (C.O.P.D.). (R. 185, 198). In April of 2007, plaintiff was diagnosed at OSU Medical Center

3

with spondylosis of the thoracic spine. (R. 191). Also in 2007, plaintiff was seen at the Free Clinic in Bristow for chronic knee, elbow, left shoulder and lower back pain. (R. 285-287). In September of 2007, plaintiff was treated for sinus infection and chronic back pain. Id.

On April 20, 2007, plaintiff underwent a Social Security Disability Examination, which was conducted by Angelo A. Dalessandro, D.O. (R. 262). Plaintiff's chief complaint was "shortness of breath." Id. Plaintiff complained of back, knee, elbow, and left shoulder pain, along with swelling in his ankles and occasional swelling in his fingers. (R. 263). Dr. Dalessandro also noted that plaintiff was obese, had difficulty sleeping, and experienced nervousness and depression. Id. Plaintiff's gait was normal, he could heel-and-toe walk, and he had no problems getting on or off the examination table. (R. 263, 264). He was also alert and oriented. Id. Dr. Dalessandro found that plaintiff's chest expanded equally bilaterally but that there appeared to be "some expiratory grunting." (R. 263). Dr. Dalessandro also found some tenderness on the medial aspect of plaintiff's left wrist but found normal range of motion. Id. Plaintiff had tenderness in the right lumbodorsal area with normal straight leg raising, tenderness in the upper left dorsal area, and tenderness in the left anterior shoulder joint with normal range of motion. (R. 263-64). Plaintiff had no evidence of muscle atrophy or paralysis. (R. 264). Dr. Dalessandro's impression was: asthma, morbid obesity, hypertension, and rule out osteoarthritis. Id. Dr. Dalessandro's assessment included findings that plaintiff's gross and fine manipulation were present and that plaintiff had no respiratory distress during the examination. Id.

During this same time period, Dr. Michael Morgan, Psy.D. described plaintiff as attentive with an anxious but normal thought process. (R. 241). Dr. Morgan noted symptoms of "anxiety and transient depression, for which substance use could not be ruled out as being causal." Id. Also in April of 2007, Dr. Dorothy Millican, Ph.D. noted mild restrictions on plaintiff's daily

living activities and moderate restrictions on social functioning. (R. 258-259). Dr. Millican stated plaintiff could accomplish tasks, interact appropriately with others at least on a superficial level, and adapt to a normal work week. (R. 260). Dr. Millican concluded that plaintiff was not significantly limited in any respect, except for moderate limitations in the ability to understand, remember, and carry out detailed instructions. (R. 258). She also found moderate limitation in plaintiff's ability to interact appropriately with the general public and his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (R. 259).

In October, 2007, plaintiff sought treatment for depression, and substance abuse at CREOKs mental health services. (R. 290). Since then, plaintiff has been treated for depression and substance dependency in remission by group psychotherapy, pharmacological management, case management, and individual rehabilitation. (R. 29, 30, 36, 38, 222, 290-95, 312-318). At the time of the hearing, plaintiff was receiving psychological treatment three days a week. (R. 29, 30). In March of 2008, Dr. Tandon, of CREOKs Mental Health Services, diagnosed plaintiff with major depressive disorder recurrent and indicated plaintiff had significant limitations in his daily life and social functioning. (R. 298, 308). There is some evidence that plaintiff may have been using methamphetamine near or at the time Dr. Tandon saw him. (R. 314).[1] In reviewing plaintiff's affective disorder, Dr. Tandon noted the plaintiff's depression, anger, anxiety, isolation, and sleep disturbance were improving in treatment. (R. 306).

---

[1] Although plaintiff claimed to be in early remission from amphetamine dependence, "(p)laintiff reported in September 2008 that he had no (sic) used methamphetamine in the past month, thus indicating that he had been abusing drugs near or at the time that Dr. Tandon saw him." (Dkt. # 14 at 5)

5

**Issues**

Plaintiff's allegations of error are as follows:

1. The ALJ erred in finding that plaintiff's impairment does not meet or equal listing 12.04, Affective Disorder; specifically, plaintiff argues that he suffers from severe major depression and, thus, meets listing 12.04.
2. The ALJ failed to consider the following combined impacts of Claimant's impairments: chronic pain, COPD, obesity, and depression.
3. The record supports a finding of disability due to depression (i.e., plaintiff meets the listing).
4. The ALJ improperly evaluated plaintiff's pain by relying on SSA examiners who did not have the benefit of Exhibits 10F-14F.
5. The ALJ erred in his RFC assessment, failed to consider the mental demands of his past work and the frequent breaks he would need to take, failed to reconcile the differences between the job plaintiff performed and the job identified by the VE.

**Discussion**

Plaintiff cites a Psychiatric Review Technique (PRT), arguing that it shows that "plaintiff's depression meets the criteria for Affective Disorders 12.04." The PRT was completed by Dr. Tandon, whom plaintiff asserts was his treating physician. (R. 298, 306). Plaintiff argues that the ALJ improperly discounted Dr. Tandon's opinion by relying solely on the finding that Dr. Tandon "apparently relied quite heavily on the subjective report [of] symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what claimant reported." (Dkt. # 12 at 5). Plaintiff asserts that Dr. Tandon's opinion should be given great weight and, based on the opinion, plaintiff meets the 12.04 listing for Affective Disorders. Id. Plaintiff also cites his own testimony at the hearing and certain medical records. Id. The ALJ, on the other hand, not only found that plaintiff's alleged depression did not meet or equal a listing, he found that plaintiff's depression was not a severe impairment, since it appeared to be the result of methamphetamine abuse. (R. 15). Defendant argues that the record supports the ALJ's express finding and that Dr. Tandon's "finding" is

contradicted by his own medical records. (Dkt. # 14 at 4-5). In addition, defendant argues that the ALJ's decision was supported by the psychological evaluation of Michael Morgan, Psy.D. and Dorothy Millican, Ph.D. and that, in any event, Dr. Tandon's relationship with plaintiff was extremely limited, rendering it of little relevance. Id.

At the hearing, plaintiff testified that he isolates himself "two or three times a day, sometimes more," because "I don't want to be around anyone." (R. 36). Plaintiff also testified that he wakes up four or five times a night, either to go to the bathroom or for an unexplained reason, and that it takes him an hour to "get tired back down enough to go to sleep." Id. Plaintiff also testified, primarily in response to leading questions, that he has a decrease in energy, feelings of guilt and worthlessness, a "wish that I would die. . .," and a belief that people are following him. (R. 38).

Plaintiff cites a CREOKS report dated July 2, 2002. (R. 220-228). Plaintiff only cites the second, third, and fourth pages, which includes a diagnosis of "Major Depressive Disorder" and references plaintiff's many years of intravenous methamphetamine "crank" use. (R. 221). Plaintiff failed to cite the last several pages of the report which include a Comprehensive Treatment Plan with several goals, including reducing plaintiff's depression. (R. 224). There is no indication in the report that plaintiff's depression is not fully treatable. (R. 220-28). Plaintiff cites a similar report dated October 25, 2007, also from CREOKS. (R. 289-96). Plaintiff relies solely on that portion of the report that includes the Client Assessment Record and lists several "descriptors," including depression. (R. 289). Plaintiff fails to cite to the section of the form which states that plaintiff was given new objectives, that his "previous objectives (were) met," that his discharge planning included the statement that he would "reduce depression by 50%,"

and that he had a projected discharge date of October, 2008, a year later. (R. 295-96). Again, nothing on the form indicates that plaintiff's depression is not treatable.

On March 25, 2008, Dr. Tandon completed his Psychiatric Review Technique. Dr. Tandon put a check mark on the form noting "12.04 Affective Disorder" and wrote "Depression disorder not otherwise specified." (R. 298). Dr. Tandon also noted under Section 12.02 that plaintiff "spends much of his time severely depressed." (R. 299). Under Section 12.04, Dr. Tandon checked six of the nine categories. (R. 301). Under Section 12.09 Substance Addiction Disorders, Dr. Tandon checked Section 12.04 and noted "(d)epression, anger, anxiety, isolation, sleep disturbance currently in treatment- and improving." (R. 306). Finally, plaintiff cites a September 25, 2008, CREOKS Treatment Plan. (R. 312-14). The plan indicates a diagnosis of "Depression NOS" and includes a "Client Interpretive Summary," in which plaintiff reports that his "symptoms of depression have been going up and down over the past month, . . . that he takes a hit or two of pot a few times/mo when he's around it, . . . (and) that he hasn't used meth in the past month." (R. 314). In addition, plaintiff reported that "he is still able to keep the house clean and that it is 'a tug-of-war keeping it that way' but that he's able to do it." Id. The plan includes a Discharge Plan with a Criteria of a 50% reduction in plaintiff's depression and a revised discharge date of May, 2009. Id.

The Court first notes that it is questionable whether Dr. Tandon is considered a treating source. Generally, a physician will be considered a treating source only if the physician has seen the claimant "a number of times and long enough to have obtained a longitudinal picture of the claimant's impairment." Doyal v. Barnhart, 331 F.3d 758, 763 (10th Cir. 2003); see also Randolph v. Barnhart, 386 F.3d 835, 839-40 (8th Cir. 2004)). Although Dr. Tandon is with CREOKS, nothing in his report indicates that he reviewed CREOKS' records or spoke with

those at CREOKS who were treating plaintiff. Defendant correctly notes that the PRT is the only evidence in the record of any relationship between Dr. Tandon and plaintiff. (R. 298-310). A single PRT is not sufficient to evidence a treating physician relationship. In addition, the PRT does not indicate that those providers at Creoks who were treating plaintiff had changed their view that the treatment of plaintiff's depression was showing progress and that they anticipated a discharge date in the near future. (R. 295-96). In fact, the September, 2008 Treatment Plan, indicates that plaintiff is making progress and that a discharge date is anticipated. (R. 312-15). Moreover, the September, 2008 Treatment Plan notes that plaintiff used methamphetamines only a month before, making it possible that plaintiff was using methamphetamines at the time he saw Dr. Tandon. Thus, Dr. Tandon's PRT was not entitled to great weight, and it is contradicted by the additional evidence cited by plaintiff.

The ALJ also relied on other evidence that contradicts Dr. Tandon's PRT. (R. 20). For example, an April 2007 psychological evaluation by Michael Morgan, Psy.D. describes plaintiff as attentive, interested, poised, and cooperative with no current mental health treatment. (R. 238). Dr. Morgan's diagnosis was amphetamine dependence, with physiological dependence and anxiety disorder "for which substance use could not be ruled out as being causal." (R. 241). Dr. Morgan concluded, "With appropriate treatment he can achieve a more normal level of psychological functioning in less than one year." Id. Plaintiff told Dr. Morgan that he cared for his grandchildren, visited with his son, and helped his sister. (R. 239). Plaintiff also said that he performed all of the necessary household chores in a normal amount of time and could drive without restrictions. (R. 239). Dr. Morgan described Plaintiff's mood as anxious, but his thought process was normal. Dr. Morgan stated that Plaintiff was logical, coherent, and goal-directed and appeared to be operating at a low average intelligence level. (R. 240). He opined

9

that Plaintiff had good social judgment and a fair ability to make work decisions. (R. 240). Thus, Dr. Morgan's medical opinion supported the ALJ's finding that without substance abuse, plaintiff did not have a mental work related impairment. (R. 15).

Also in April 2007, Dorothy Millican, Ph.D., reviewed Plaintiff's mental health records, including Dr. Morgan's report, and concluded that Plaintiff had mild restrictions on his daily living activities, and moderate restrictions on his social functioning and in maintaining his concentration, persistence, and pace. (R. 254, 256). Plaintiff had experienced one or two episodes of decompensation. (R. 254). Dr. Millican stated that Plaintiff's drug abuse was not material and observed that he "may actually look worse when he is completely (drug) free for an extended period of time." (R. 256). Dr. Millican also considered Plaintiff's ability to perform tasks associated with mental functioning in the workplace and stated that he was not significantly limited in sixteen out of twenty categories. (R. 258-59). Plaintiff was moderately limited in his ability to work with detailed instructions, interact appropriately with the general public, and maintain basic standards of neatness. (R. 258-59). In the comments section, Dr. Millican stated that Plaintiff could do some simple and complex tasks, interact appropriately with others on a superficial level, and adapt to a normal workweek. (R. 260).

The foregoing clearly establishes that there is substantial evidence in the record (which was relied upon by the ALJ) to support the ALJ's decision that plaintiff did not meet or equal a listing. This finding is AFFIRMED.

Next, plaintiff argues that the ALJ "failed to properly consider the medical record concerning the combined impact chronic pain, COPD, obesity and depression." (Dkt. # 12 at 6). Plaintiff's specific complaint appears to be that the ALJ did not pose a hypothetical to the VE that included all of plaintiff's conditions. (Dkt. # 12 at 7). The ALJ is only required to include

those impairments or conditions that are supported by objective medical evidence in a hypothetical. With the exception of plaintiff's depression, the ALJ did so. As to plaintiff's depression, the ALJ found that it was not a severe impairment, because it was a result of plaintiff's substance abuse. Presumably, for this reason the ALJ did not pose a hypothetical to the VE that addressed the depression. There is no objective medical evidence to support the ALJ's finding that absent plaintiff's substance abuse, he would not suffer from depression. Moreover, even if the ambiguous statements in the record concerning plaintiff's substance abuse did provide such support, the support is not substantial. Based on a detailed review of the record, the undersigned is doubtful that plaintiff's depression, even if severe, renders him unable to work. But, it is the role of the Commissioner to make that determination. This matter is, therefore, remanded so that the ALJ can reevaluate his finding regarding the severity of plaintiff's depression and, if plaintiff's depression is found to be severe, so that the ALJ can begin anew at Step Three.[2]

## Conclusion

The decision of the Commissioner is hereby REVERSED and REMANDED, in part, and AFFIRMED, in part, for further proceedings that are consistent with this Opinion and Order.

SO ORDERED this 13th day of April, 2011.

_____
T. Lane Wilson
United States Magistrate Judge

---

[2] Plaintiff's fourth issue, that the ALJ improperly evaluated plaintiff's pain by relying on SSA examiners who did not have the benefit of Exhibits 10F-14F is without merit. To this extent, the ALJ's decision is also AFFIRMED.